SILAS PHELPS *et al.*, Appellants, *v.* WILLIAM WHITE, Appellee.

APPEAL FROM MARION.

Where the complainant in a bill does not waive the oath of the respondent, and his answer is sworn to, a decree against the answer will not be sustained, unless the evidence in the case contradicts the answer.

THIS bill shows that, in 1851, Jesse Lane and wife conveyed to Phelps the south half of the northwest quarter of section 36, and the north half of the east half of the southeast quarter of section 35, and the southeast quarter of the northeast quarter of section 35, 33 N., R. 3 E. (160 acres.) That real consideration was a promise to provide for and maintain said Jesse and wife, during their lives; that afterward Jesse Lane was diseased of dropsy; that then a written agreement was entered into, conveying all Lane's personal property, excepting one horse, to said Phelps. Property valued at $800, and for which Phelps agreed to maintain said Lane and wife, and provide necessaries and comforts during their life, etc. That *afterward,* in last of 1851 or first of 1852, White was called to attend said Jesse Lane, as a physician, and did so at *Lane's* instance, not *knowing* that any one else was bound therefor, and supposing Lane was responsible for same. That Lane refused to pay his medical bill; that on the 8th of March, 1852, White recovered a judgment for his bill before a justice *against Lane;* that after said judgment, Lane called on one Siple to write a receipt to Phelps in full, and ante-date it, to defraud White. Lane refused, but drew up another agreement, transferring the horse previously excepted to said Phelps, and binding said Phelps again to keep and maintain said Lane and wife for life; that on the 6th of April, 1852, an execution issued on said judgment, and on the 3d of May, 1852, was returned "no property found;" that in the life time of this *fi. fa.* Lane died; *left no estate;* no administrator has been appointed; that White called on Phelps to pay Lane's judgment, and Phelps refused, and denied that he was bound to do so. Prays that Phelps and Jane Lane be defendants, and answer under oath the said bill, and prays that Phelps be ordered to pay said judgment against Lane.

Phelps, by his answer, admits transfer of 160 acres of land and some personal property to him, valued at $700 or $800, in consideration of their support for life. Agreement first made in September, 1850, and reduced to writing in January, 1851; secondly, in March, 1852, at the desire of old man Lane, who thought the first bond bad, that said second bond was given to please Lane, and not for the purpose of fraud; that $800 was

inserted in said bond, as that was the full value of all Lane sold to respondent; that Lane and wife lived with respondent from September, 1850, to March, 1852, when Lane died. His wife (Jane) lives with him still, and bids fair so to do many years. Respondent denies that he was to pay medical bills; avers that Lane reserved (as he was to do) a large amount of money and other property ($140 cash), and property worth $200 to be afterward sold, and took notes to be so used if necessary; that Lane never called on respondent to pay his doctor bills, but paid them himself, for services, to others in the same sickness; that Lane offered to pay complainant money for his bill, which respondent thinks was sufficient for his attention and ample pay. Complainant refused it. Respondent avers that he has been at great trouble and expense providing for and attending to said Lane and wife, from 1850 to 1852. Writing referred to in hands of Jane Lane, where complainant could have a remedy thereon, if defendant Phelps liable for medical bill of Lane.

Respondent admits rendering medical services to said Lane, and avers that Lane had the money to pay for them, and offered so to do; and that he was not to be liable therefor, and that complainant knew it, and had notice of the entire transaction, and that he was to look to Lane for his pay. Admits that judgment was given against Lane; protests against any transaction between Lane and Siple binding defendant; avers that the article drawn up by Siple was pursuant to the original agreement; denies that any horse was excepted.

Respondent denies liability on last bond to complainant for his bill, because services were rendered *before* the agreement was executed; denies liability on first agreement, for by its terms defendant was not to be holden for medical bills, and complainant knew it at the time.

Admits execution and return. Admits the death of Lane intestate; is advised that the bond is assets in hand of administrator, if respondent is liable at all for any failure, and affords complainant remedy at law.

Denies that by any *written* contract (except the one entered into *after* complainant rendered medical services), Lane's personal property was conveyed to defendant; states that it had all, long before, been sold and transferred to him, and delivered to him in payment for taking care of Lane and wife.

Admits that judgment was rendered for medical bill. Respondent knows nothing about a receipt between Siple and Lane, and protests against being bound by it; and denies that the article drawn up by Siple contains the same terms as the first instrument, and by first writing he was not to pay doctor

bills, and the last was made after services were rendered. Denies intent to defraud White.    States that before and after the articles were drawn up, Lane was able and willing to pay White.

Respondent estimates property received by him at $750. States that his trouble and expenses taking care of Lane and wife are worth that sum.    Prays to be dismissed.

Mrs. Lane answers, sustaining facts set up in Phelps' answer, and corroborating same.

General replication by White.

A decree was entered at September term, 1856, of the Marion Circuit Court, BEECHER, Judge, presiding, in favor of appellee, for the sum of $84.35, and costs of suit.    Respondents then prayed this appeal.

J. N. HAYNIE, for Appellants.

HOUTS and HAMILTON, for Appellee.

CATÓN, J.    It is certain that the services were rendered to old Mr. Lane, under the supposition that he, and not Phelps, was to pay for them, and that the credit was given to him alone.    Indeed, the complainant sued and recovered a judgment against him, for the services.    At this time, Lane, at least, had a mare which was his individual property, and from the evidence, it is not improbable that he also had money by him.    Failing to recover the amount of that judgment, the complainant filed this bill, averring that Phelps had agreed with Lane to support him and his wife during their lives, whereby he became liable to pay this bill for medical services rendered him; and also averring that Lane had fraudulently transferred the mare to Phelps, to defraud the complainant out of his demand, and to prevent him from collecting his judgment.

The defendant, Phelps, answered, admitting the transfer, by Lane, of a part of his property to him, in consideration of which he agreed to support Lane and his wife during their lives, except in medical attendance; and denying the alleged fraud in the purchase or transfer of the mare.    The complainant did not waive the oath of the defendant to his answer, and the answer is sworn to.    The answer denies all the facts stated in the bill on which the equity of the bill is based, and we think it is not overcome by the testimony in the cause. Indeed, we think the weight of evidence is with the answer, independently of the oath of the defendant, as to the undertaking of Phelps to pay for medical services for Mr. and Mrs. Lane.    Even admitting that such an agreement between Lane

and Phelps would have entitled the complainant to the relief sought by this bill, there is really no evidence whatever in this record against the answer. So as to the fraudulent purchase of the mare to delay the complainant in the collection of his judgment against Lane, the same reply is to be made.

The decree must be reversed and the bill dismissed.

*Decree reversed.*